## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

—————————————————
)
RAHONDA MACCLAIN,                          )
in her individual capacity and             )
as Administrator of the Estate             )
of Damion MacClain, Deceased,              )
                                           )
                Plaintiff,                 )
                                           )   NO. 4:13-CV-00210-HLM
v.                                         )
                                           )   JURY TRIAL DEMANDED
BRIAN OWENS, Commissioner,                 )
Georgia Department of Corrections,         )
et al.,                                    )
                Defendants,                )
—————————————————)

## PLAINTIFF'S RESPONSE TO DEFENDANTS' PRE-ANSWER MOTION FOR MORE DEFINITE STATEMENT, TO STRIKE AND TO DISMISS IN PART

Plaintiff RaHonda MacClain respectfully submits this response to *Defendants' Pre-Answer Motion for More Definite Statement, to Strike and to Dismiss in Part*, Dkt. 22.

## INTRODUCTION

This section 1983 case arises from the death of 27-year-old Damion MacClain. Mr. MacClain was found dead in a cell at Hays State Prison (Hays) on December 26, 2012. Mr. MacClain had been stabbed, beaten, and strangled to death by other prisoners who—because of lack of supervision by officers, known

rampant problems with broken cell-door locks, and other dangerous conditions—were able to leave their cells in the middle of the night, assault Mr. MacClain, and kill him.  Mr. MacClain's death was not an aberration.  Seven days earlier, Derrick Stubbs was found dead in his cell at Hays.  Two other Hays prisoners were killed in the weeks following Mr. MacClain's death.  Despite pervasive violence, Defendants failed to respond to the threat of harm these conditions posed to Mr. MacClain and others.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 4, 2013, Damion MacClain's mother, Rahonda MacClain, filed this lawsuit against eight defendants in their individual capacities under 42 U.S.C. §1983, alleging a single count of deliberate indifference in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.  The claim is based on each Defendant's failure to address conditions at Hays that threatened the lives of Mr. MacClain and others, and caused Mr. MacClain's death.  Compl. ¶¶ 74-78.

Plaintiff's Complaint sets forth sufficiently detailed allegations regarding: (1) the dangerous conditions at Hays, including the long-standing problem of non-functioning cell locks, which resulted in violent incidents and deaths around the time of Mr. MacClain's death, Compl. ¶¶ 29-31, 40-53; (2) Defendants' knowledge that these violent conditions had resulted in multiple stabbings, beatings, and assaults on inmates and officers, *id*. ¶ 4, 20-22; and (3) Defendants' failures to respond to these conditions, which led to Mr. MaClain's death, *id*. ¶¶ 4-6, 40-53.

2

Despite the adequacy of the Complaint, Defendants filed a pre-answer motion for more definite statement, to strike and to dismiss in part.  Dkt. 22. Defendants seek further detail, pre-discovery, about how Plaintiff alleges that each Defendant is responsible for Mr. MacClain's death and, at the same time, ask that the court strike portions of the Complaint that illustrate the dangerous conditions and Defendants' failure to do anything to ameliorate them.  Defendants also seek dismissal of claims against Defendants Bailey-Dean, Johnson, and Burns, despite the plainly adequate allegations that these Defendants were deliberately indifferent to the substantial risks of serious harm that caused Mr. MacClain's death.

Plaintiff responds to the motion to dismiss in Section I; the motion for a more definite statement in Section II; and the motion to strike in Section III.

## I. DEFENDANTS' PARTIAL MOTION TO DISMISS SHOULD BE DENIED, SINCE MS. MACCLAIN'S COMPLAINT STATES VALID EIGHTH AMENDMENT CLAIMS.

The facts alleged in the Complaint plausibly support the conclusion that Defendants Bailey-Dean, Burns, and Johnson—the only defendants now seeking dismissal—were deliberately indifferent to a substantial risk of serious harm.  A complaint is sufficient to state a claim and therefore withstands a motion brought pursuant to Federal Rule 12(b)(6), when it contains "enough facts to make a claim for relief plausible on its face," that is, when it has sufficient factual content to allow a court "'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324-25 (11th Cir.

2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Determining whether a complaint states "a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see, e.g.*, *Resnick*, 693 F.3d at 1327 (considering a complaint "as a whole" and "applying common sense").

### A. The Complaint States Eighth Amendment Deliberate-Indifference Claims Against Bailey-Dean, Burns, and Johnson.

A plaintiff is entitled to relief on an Eighth Amendment claim arising from prison officials' failure to protect a prisoner when the plaintiff shows that (1) a prison official actually, subjectively knew that an inmate was facing a substantial risk of serious harm; (2) the prison official disregarded that known risk by failing to respond to it in an objectively reasonable manner; and (3) the prison official's deliberate indifference caused a violation of a prisoner's constitutional rights. *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007).  Ms. MacClain's Complaint, taken as a whole, is sufficient to state an Eighth Amendment claim against Defendants Bailey-Dean, Johnson, and Burns.

### 1. The Subjective Component of Deliberate Indifference is Adequately Alleged.

Defendants' liability for failing to protect a prisoner depends on whether they exposed the prisoner to a sufficiently substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).  A prison official cannot escape liability by showing that he or she did not know that the specific prisoner injured was

4

especially likely to be assaulted by the specific prisoner who eventually committed the assault. *Id.* at 843. Rather, knowledge of a "general danger arising from a prison environment" is sufficient to support a finding of deliberate indifference where the environment creates an "unjustified constant and unreasonable exposure to violence." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).[1]

It is clearly established that "conditions in a [prison] facility that allow prisoners ready access to weapons, fail to provide an ability to lock down inmates, and fail to allow for surveillance of inmates pose a substantial risk of serious harm to inmates." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007).[2]

---

[1]   A plaintiff may demonstrate a prison official's knowledge of a substantial risk of serious harm either through direct evidence or by "'inference from circumstantial evidence.'" *Rodriguez*, 508 F.3d at 617 (*quoting Farmer*, 511 U.S. at 842).

[2]   Bailey-Dean, Johnson, and Burns cite several cases in which subjective knowledge was not established. Dkt. 22-1 at 20-21. Those cases arise under facts that are materially different from this case. For example, in *Carter v. Galloway*, the prison officials knew only that the plaintiff's cellmate was behaving strangely and wanted the plaintiff to help him fake a suicide. 352 F.3d 1346, 1349-50 (11th Cir. 2003) (per curiam). In *Goodman v. Kimbrough*, there was no evidence that guards knew about any specific risk of harm to the plaintiff, and the plaintiff did not show a pervasive and generalized risk of violence. 718 F.3d 1325, 1332-33 (11th Cir. 2013). In this case, Ms. MacClain's allegations show that inmates were routinely assaulted by others, resulting in hospitalization of some and the death of one inmate shortly before Mr. MacClain was killed. *See, e.g.,* Compl. ¶¶ 31-32. Ms. MacClain further alleged that each Defendant knew of those assaults, as well as the prison's malfunctioning locks and inadequate staffing. *See, e.g.,* Compl. ¶¶

### a.     Each Defendant Knew of the Unreasonable Safety Risks at Hays.

The Complaint alleges that *all* Defendants—including Bailey-Dean, Johnson, and Burns—knew (1) that security conditions had deteriorated to unconstitutional levels by the time of Mr. MacClain's death, resulting in stabbings, beatings, and assaults, Compl. ¶¶ 1, 4; (2) that the prisoner charged with killing Mr. MacClain had a history of assault, *id*. ¶ 6; (3) that officers had been critically injured by prisoners with weapons, *id*. ¶ 22; (4) that many prisoners and their families complained about the prison's high level of violence, *id*. ¶ 22; (5) that the prison was not adequately staffed, *id*. ¶ 25; (6) that the prison's cell door locks did not work and permitted inmates to come and go as they pleased, *id*. ¶¶ 40, 47; and (7) that the prison's security failures contributed to the death of an inmate less than one week before Damion MacClain was murdered, *id*. ¶ 22.

The above allegations support the conclusion that every Defendant in this case was aware of conditions presenting a substantial risk of serious harm at the time that Mr. MacClain was murdered.[3]

---

1, 4, 25, 40, 47.  Those allegations plausibly support the conclusion that Defendants knew of a substantial risk of serious harm to Mr. MacClain.

[3] The death of Derrick Stubbs is especially potent evidence of Defendants' knowledge since it was "strikingly similar" and occurred just seven days before Mr. MacClain's death.  *See Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1236 (11th Cir. 2010) (holding plaintiff stated claim for deliberate indifference where one inmate died under circumstances similar to those that resulted in brain damage of another inmate a month earlier).

### b.  Johnson, Burns, and Bailey-Dean Had Additional, Particularized Knowledge.

The Complaint further alleges that Johnson and Burns specifically knew that maximum-security prisoners in a dorm of 62 men ignored the lockdown order given several hours before Mr. MacClain was killed.  Compl. ¶¶ 62, 64.  As the officers on duty at the time of Mr. MacClain's death, they knew they were responsible for securing those inmates or otherwise reducing the risk of harm, and took no action to do so.  *Id.* ¶¶ 17, 18, 64.  Johnson and Burns also knew that they were assigned to a maximum security facility with a high rate of violence, malfunctioning door locks, and an armed inmate population, where an inmate had been murdered by another inmate seven days earlier.  *Id.* ¶¶ 22, 25, 40, 47.  Under those conditions, the Complaint clearly alleges that Johnson and Burns "had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence."  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995) (holding plaintiff presented sufficient evidence of official's knowledge where "inmate-on-inmate violence occurred regularly" and "the violence was severe enough to require medical attention and even hospitalization on occasion").

The Complaint also alleges that Bailey-Dean knew that Ms. MacClain's son was in danger and sought a prison transfer, Compl. ¶¶ 22, 58; that Bailey-Dean reviewed incident reports documenting a high rate of deaths, stabbings, and assaults, *id.* ¶ 22; and that Bailey-Dean knew of a pervasive problem of broken locks on cell doors from 2008 to the time of Mr. MacClain's death, *id.* ¶ 22.  These

conditions were sufficient to put Bailey-Dean on notice of a substantial risk of serious harm to Mr. MacClain.  *See Rodriguez*, 508 F.3d at 617 n.12 ("[W]e conclude that the gang-related threats made on [the plaintiff's] life, which were explicitly reported to prison officials, present a substantial enough risk of harm to trigger a prison official's Eighth Amendment duty to act . . . .").

### 2. The Objective Component of Deliberate Indifference Is Adequately Alleged.

A prison official "violates the Eighth Amendment if he responds to a known risk 'in an objectively unreasonable manner.'"  *Rodriguez*, 508 F.3d at 620 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003)).  "Turning a blind eye to . . . obvious danger provides ample support for the finding of the requisite recklessness" to establish deliberate indifference.  *Thomas v. Bryant*, 614 F.3d 1288, 1316-17 (11th Cir. 2010).  Doing nothing at all to reduce the risk is "not even arguably reasonable."  *See Marsh*, 268 F.3d at 1034.

### a. Each Defendant Responded Unreasonably.

The Complaint alleges that each Defendant, including Burns, Johnson, and Bailey-Dean  (1) ignored broken cell door locks for years, Compl. ¶¶ 1, 40; (2) housed the prisoner charged with killing Mr. MacClain in an area where many cell door locks did not work, *id*. ¶ 6; (3) failed to take any action to address deteriorating conditions despite notice that the prison's conditions were unconstitutional, *id*. ¶ 23; (4) failed to fix broken locks or control inmate movement in spite of rising levels of violence, *id*. ¶¶ 24, 30, 33, 51; (5) failed to

8

take reasonable steps to ensure adequate staffing, *id*. ¶ 25; (6) failed to respond to unsafe conditions that permitted violence to occur, *id*. ¶ 30; (7) failed to address the lawlessness that contributed to the death of Derrick Stubbs, *id*. ¶ 33; (8) failed to take reasonable alternative steps to ensure Mr. MacClain's safety short of transferring him, *id*. ¶ 59; and (9) permitted gang leaders to control housing assignments, *id*. ¶ 61.

### b. Johnson, Burns, and Bailey-Dean Ignored Their Particularized Knowledge.

The Complaint further alleges that Johnson and Burns made no attempt to secure prisoners in their cells after observing that inmates ignored a lock-down order. *Id*. ¶¶ 62-64. Johnson failed to make any of his required rounds of the dorm where Mr. MacClain was detained in the hours before his death. *Id*. ¶¶ 17, 62. Further, neither Johnson nor Burns alerted correctional staff about the problem or took any other steps to reduce the risk of harm. *Id*. ¶¶ 17-18, 67, 72. Doing nothing is simply not a reasonable response when an official knows of a high risk of serious harm. *See, e.g.*, *Harper*, 592 F.3d at 1235 (holding failure to take "any steps" to control risk not a reasonable response); *Marsh*, 268 F.3d at 1028 (holding allegation that officials "took no remedial measures" was "sufficient to allege deliberate indifference").

Bailey-Dean had additional knowledge specific to Mr. MacClain since Ms. MacClain advised Bailey-Dean directly that Mr. MacClain had been threatened with harm, was in danger, and needed to be transferred, Compl. ¶ 58. Bailey-Dean

argues, however, that the Complaint's reference to Bailey-Dean referring the matter to a prison counselor "negates any inference of deliberate indifference." Dkt. 22-1 at 18.  That is untrue.  First, the Complaint does not allege that Bailey-Dean actually referred the matter to a counselor—it alleges that Bailey-Dean informed Ms. MacClain that the "matter had been referred to Mr. MacClain's prison counselor."  Compl. ¶ 58.[4]  Second, even if Bailey-Dean did refer the matter to a counselor, she cannot escape liability by merely claiming that she responded in some minimal way.  *See Hale*, 50 F.3d at 1584 (holding warden's "wor[k] toward construction of a new jail" would "not necessarily absolve him" because deliberate indifference could be established by warden's "disregar[d] [of] 'alternative means' or interim measures for reducing the risk of violence" (citation omitted)); *LaMarca*, 995 F.2d at 1538 (holding warden's "good faith efforts" did not preclude liability where evidence suggested warden "recklessly disregarded the necessary means to protect inmate safety").  Rather, Bailey-Dean can be found deliberately indifferent if she "'knowingly or recklessly declined to take actions that would have improved'" the conditions endangering Mr. MacClain.  *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010) (quoting *LaMarca*, 995 F.2d at 1537).  As an official who shared responsibility for day-to-day operations at the prison, Compl. ¶ 15, Bailey-Dean could have taken steps to ensure that Mr. MacClain was moved to a more secure part of the prison, transferred to a safer prison, or actually monitored

---

[4] Discovery is necessary to determine whether this was in fact true.

by guards.  Referring the matter to a prison counselor alone is not enough, and Bailey-Dean is not entitled to a presumption that doing so would have been reasonable as a matter of law.

### 3.  Causation Is Adequately Alleged.

Causation is established where a deliberately indifferent prison official had the means substantially to improve the inmate's safety, knew that his actions would be insufficient to provide the inmate with reasonable protection from violence, and had other means available to him which he nevertheless disregarded.  *Rodriguez*, 508 F.3d at 622-23 (quoting *LaMarca*, 995 F.2d at 1539).

The Complaint alleges that all defendants—individually and collectively— failed to take any actions in their power to effect change at Hays.  For example, they failed to change cell door locks despite rising levels of violence, Compl. ¶¶ 1, 24, 30, 33, 51; failed to ensure adequate staffing, *id.* ¶ 25; permitted gang leaders to control housing assignments, *id.* ¶ 61; and failed generally to take any steps to improve conditions, even after the death of Derrick Stubbs, *id.* ¶ 33.  Addressing any of these issues could have prevented Mr. MacClain's assault; failing to address them was a proximate cause.

Johnson and Burns had the means to improve Mr. MacClain's safety by calling for assistance when inmates failed to lock down and monitoring inmates, but they disregarded each of those means.  *See* Compl. ¶¶ 17, 18, 67; *see also Marsh*, 268 F.3d at 1029 ("Conditions . . . where violent prisoners are allowed free

reign of a jail with easy access to weapons without proper supervision by guards could be found to have caused the assaults on [the p]laintiffs.").

Similarly, though Bailey-Dean had the means to improve Mr. MacClain's safety by taking steps to transfer him to a more secure prison or by providing better security at Hays, she failed to do so. *See* Compl. ¶¶ 15, 58; *see also Rodriguez*, 508 F.3d at 622 (holding plaintiff produced sufficient evidence of causation where official had power to initiate action that "could have averted" the risk of harm).

### B. The Complaint's Allegations Establish that Bailey-Dean, Burns, and Johnson Are Not Entitled to Qualified Immunity.

Defendants Bailey-Dean, Burns, and Johnson are not entitled to qualified immunity. An official is not entitled to qualified immunity from damages claims if "the law clearly established [the plaintiff's] rights at the time of the putative misconduct." *Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013). This rule simply ensures that public officials have fair notice of prohibited conduct before being subjected to damages liability. *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010). There are "a few ways" in which a plaintiff may show that an inmate's rights were clearly established. *Morton*, 707 F.3d at 1282. One way is to show that "a materially similar case" has been decided by the Supreme Court of the United States, the Supreme Court of Georgia, the Eleventh Circuit, or the district courts. *Id.*; *see also Greason v. Kemp*, 891 F.2d 829, 833 (11th Cir. 1990). Another is to show a "broader, clearly established principle that should control the novel facts" in a particular case. *Morton*, 707 F.3d at 1282.

The Complaint describes the pervasive violent conditions at Hays that contributed to Mr. MacClain's death.  *See, e.g.*, Compl. ¶¶ 3-4, 20, 24-25, 29-32 (describing dangerous conditions at Hays including broken cell locks, understaffing, lack of supervision of inmates, pervasive presence of weapons, frequent reporting of stabbings, occurrence of deaths, prisoners routinely sleeping in cells they were not assigned to, and lack of control over inmate movement, among others).  The Complaint further alleges that the Defendants, including Bailey-Dean, Johnson, and Burns, had knowledge of these conditions and failed to address them.  *See, e.g., id*. ¶¶ 17, 18, 22, 23, 30, 33.

Cases materially similar to this one have been decided numerous times.   No reasonable officer in December 2012 could have doubted that an understaffed, maximum-security prison where routine acts of violence were carried out by armed inmates, often assigned to cells without functioning locks or adequate supervision, was sufficient to create a substantial risk of serious harm to an inmate.

In *Marsh*, detainees at a county jail sued the sheriff asserting a claim of deliberate indifference, and alleging, among other things, that the dangerous conditions in which they were incarcerated violated their constitutional rights and permitted other inmates to attack and injure each plaintiff.  268 F.3d at 1024. Though the district court dismissed the plaintiffs' § 1983 claims, the Eleventh Circuit reversed in an *en banc* opinion, noting "conditions in a [prison] facility that allow prisoners ready access to weapons, fail to provide an ability to lock down

13

inmates, and fail to allow for surveillance of inmates pose a substantial risk of serious harm to inmates." *Id.* at 1028.  Rejecting the sheriff's qualified immunity argument, the *Marsh* court held that, at the time the plaintiffs were assaulted—over 16 years before Mr. MacClain's death—it was clearly established that ignoring such dangerous conditions violated the plaintiffs' rights. *Id.* at 1033-34 & n.12. The facts alleged here are materially similar to those at issue in *Marsh* and the precedent the *Marsh* court relied on in its qualified immunity analysis. *Id.* (citing *Hale*, 50 F.3d 1579, *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974), and *Williams v. Edwards*, 547 F.2d 1206 (5th Cir. 1977)); *see also id.* (describing facts of *Williams*, in which the following posed a substantial risk of serious harm:  "1) widespread possession of weapons, 2) no confiscation of weapons, 3) no segregation of violent from nonviolent inmates, 4) previous assaults, 5) overcrowding, 6) too few guards to supervise properly inmates, and 7) multiple reports of stabbing, some resulting in death").[5]

The Eleventh Circuit, in denying qualified immunity to a sheriff and officers, recently reiterated its position in *Marsh*, stating that "[a]s far back as 1974, this court held that improper supervision of inmates, overcrowding, and

---

[5]  *See also Bugge v. Roberts*, 430 Fed. App'x 753, 760 n.8 (11th Cir. 2011) (reversing district court's grant of summary judgment and finding that the "constitutional right at issue" in section 1983 suit filed by executor of the estate of a prisoner who was stabbed to death and prisoner who was injured in a state prison "was clearly established at the time of the defendants' alleged misconduct" where plaintiffs established prevalence of weapons and that prison officials failed to discipline inmates for possessing weapons, among other factors).

frequent inmate-on-inmate attacks could rise to the level of posing a serious risk of harm to an inmate, thus implicating the Constitution." *McCreary v. Parker*, 456 Fed. App'x 790, 794 (11th Cir. 2012) (unpublished) (citing *Gates*, 501 F.2d at 1309); *see also Cottone*, 326 F.3d at 1360 ("[P]rior factually similar case law gave fair and clear warning to [the defendants] that it was their duty to monitor and to supervise known violent inmates who posed a substantial risk of serious harm to other inmates.").

It is also clearly established that doing nothing to reduce the risk of harm is not a reasonable response to such a threat. *See, e.g.*, *Cottone*, 326 F.3d at 1358-59; *Marsh*, 268 F.3d at 1034 ("[P]laintiffs allege that no measures were taken to improve conditions . . . .  [T]he locks on the cells were never fixed; and supervision of the inmates was never improved.  [T]herefore, . . . [p]laintiffs adequately allege facts which (if true) show that, at the time of the incident, the [s]heriff's acts were not even arguably reasonable in the light of the clearly established law.").  Under this clear precedent, none of the Defendants is entitled to qualified immunity, including Bailey-Dean, Johnson and Burns.

Defendants Johnson and Burns knew during the hours leading up to Mr. MacClain's death that inmates in this dangerous prison had ignored a lockdown order, but made no attempt to secure inmates.  Compl. ¶ 17-18, 64.  This kind of response is objectively unreasonable. *See Marsh*, 268 F.3d at 1034.

As to Bailey-Dean, it was also clearly established that "gang-related threats made on [an inmate's] life, which were explicitly reported to prison officials, present a substantial enough risk of harm to trigger a prison official's Eighth Amendment duty to act; that is, to take some steps to investigate the likelihood that the reported threat will materialize and to take some steps aimed at reducing the likelihood of the risk." *Rodriguez*, 508 F.3d at 617 n.12.  Plaintiff, after learning from her son that he was threatened with violence by other prisoners, directly told Bailey-Dean that he was in danger. Compl. ¶¶ 55, 58.  Bailey-Dean took no reasonable actions to ensure Mr. MacClain's safety, even if she did refer the matter to his counselor.  Compl. ¶ 59; *see also* Section I(A)(2)(b), above.

Additionally, there are clearly established principles that clearly control across the discrete facts of this and prior cases.  Exposing an inmate to a known substantial risk of serious harm violates the inmate's rights under the Eighth Amendment, and "[t]here are thousands of factual permutations" of that standard "that any reasonable prison guard should be aware of."  *Rhodan v. Schofield*, No. 1:04-CV-2158-TWT, 2007 WL 1810147, at *14 (N.D. Ga. June 19, 2007).  It is well established that inmate violence presents a substantial risk of serious harm, *Farmer*, 511 U.S. at 833, and that conditions that do not allow for adequate surveillance of prisoners with access to weapons require prison officials to respond with some action directed at reducing the risk of harm to prisoners, *see, e.g.*, *Marsh*, 268 F.3d at 1028.  And it is clearly established that unreasonable responses

16

include doing "absolutely nothing," *see, e.g.*, *id*. at 1029, and disregarding "an appropriate and sufficient alternative," *see, e.g.*, *LaMarca*, 995 F.2d at 1536. Bailey-Dean, Johnson, and Burns are not entitled to qualified immunity.

## II.   MS. MACCLAIN'S COMPLAINT GIVES DEFENDANTS FAIR NOTICE OF THEIR WRONGFUL CONDUCT AND DOES NOT REQUIRE A MORE DEFINITE STATEMENT.

The Complaint alleges that each Defendant was aware of the violence that marked daily life at Hays.  The Complaint also alleges that each defendant was aware of the violence that daily threatened the lives of prisoners and that each did nothing to respond.   In setting forth a plausible claim, Ms. MacClain's Complaint contains what the Federal Rules of Civil Procedure require: "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and allegations set forth in "numbered paragraphs" each limited "as far as practicable to a single set of circumstances," Fed. R. Civ. P. 10(b).  Further, since the Complaint contains a single count of deliberate indifference and ample supporting allegations pertinent to each Defendant, the Complaint provides adequate notice of how each Defendant is liable.  *See* Fed. R. Civ. P. 8(a).

### A. To Warrant a More Definite Statement, the Complaint Must Be So Vague or Ambiguous that Defendants Cannot Reasonably Prepare a Response.

"Rule 12(e) motions are greatly disfavored by the courts."  *Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 571, 576 (N.D. Ga. 1989).  A Rule 12(e) motion is appropriate only if a pleading "is so vague or ambiguous that the party cannot

reasonably prepare a response."  Fed. R. Civ. P. 12(e).  Where a defendant is able to prepare a response, a Rule 12(e) motion will be denied.[6]

Even where a complaint contains some vagueness concerning defendants' alleged wrongdoing or the plaintiff's theory of liability, a Rule 12(e) motion is not appropriate if the complaint as a whole reasonably cures the vagueness.  *See, e.g., Ford v. Citizens and So. Nat. Bank*, 700 F. Supp. 1121, 1126 (N.D. Ga. 1988) (determining "'the only reasonable interpretation' of the complaint gave reasonable notice of the plaintiff's theory of liability and did not prevent the defendants from framing their answers," despite some vagueness).

### B.  The Complaint Is Not Too Vague or Ambiguous, and Each Defendant Is Reasonably Able to Prepare a Response.

The Complaint alleges in a single count that the eight Defendants violated Damion MacClain's Eighth and Fourteenth Amendment rights through their deliberate indifference to a substantial risk of serious injury.  Compl. ¶¶ 75-78. The allegations in the Complaint speak to that standard with concrete details about what each Defendant knew and did or failed to do.  Some of the allegations are

---

[6] *See, e.g.*, *Wimbush v. Caldera Medical, Inc.*, No. 3:11-CV-199-TCB, 2012 WL 8719632, at *2 (N.D. Ga. March 12, 2012) (denying Rule 12(e) motion because "[i]f [defendant] does not believe it is liable for the allegations attributed to it in the complaint, it may deny those allegations").  Here, information about each Defendant's conduct and what they did or failed to do is adequately alleged and, furthermore, it is information that Defendants already have in their control.  *Alliant Tax Credit Fund 31-A v. Murphy*, No. 1:11-CV-00832-RWS, 2011 WL 3156339, at *4 (N.D. Ga. July 26, 2011) (denying Rule 12(e) motion because "[t]he specific facts that [d]efendants demand[ed] c[ould] be obtained through discovery and [we]re most likely to be within [d]efendants' control").

made against Defendants collectively, but that does not render them vague or ambiguous.  *See Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997) ("When multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually.").

### 1.  The Defendants Are Able to Respond to the Allegations About What They Knew.

In addition to specific allegations about what particular Defendants knew, the Complaint alleges that the Defendants—individually and collectively—knew, for example, that conditions at Hays had deteriorated to the point that stabbings, beatings, and assaults were pervasive, Compl. ¶¶ 1, 4; that the prisoner charged with killing Mr. MacClain had a history of assault, *id*. ¶ 6; that the prison's security failures contributed to the death of an inmate less than one week before Damion MacClain was murdered, *id*. ¶ 22; and that broken cell door locks permitted inmates to come and go as they pleased, *id*. ¶¶ 40, 47.  *See* Section I(A)(1), above.

Defendants characterize those factual allegations as "general and conclusory," Dkt. 22-1 at 8, because "Defendants are not similarly situated" and some of the allegations "refer to knowledge about the facility" without specifying each individual Defendant alleged to "be in possession of that knowledge" or "any factual allegation that supports the conclusion that any particular defendant can

be . . . charged with that knowledge," Dkt. 22-1 at 9.[7]  Based on the allegations in Plaintiff's Complaint, it is reasonable to assert pre-discovery and reasonable to assume that each Defendant, given her or his respective position, had knowledge of these matters.  *See* Compl. ¶¶ 11-18 (noting each Defendant's position and duties); *see also LaMarca v. Turner*, 995 F.2d 1526, 1536 n.21 (11th Cir. 1993) (noting warden's "supervisory role and the insular character of prison communities provided strong support for the [district] court's conclusion that [the warden] must have known of these conditions").

### 2.  The Defendants Are Able to Respond to the Allegations About What They Did or Failed to Do.

The Complaint approaches the objective component of deliberate indifference, as it approached the subjective component, by making some specific allegations against particular officials, and some against the Defendants collectively.  The Complaint alleges that *all* Defendants long ignored broken cell door locks, Compl. ¶ 1; housed the prisoner charged with killing Mr. MacClain in an area where many cell door locks did not work, *id*. ¶ 6; failed to respond to unsafe conditions that permitted violence to occur and contributed to the death of

---

[7] By "conclusory," Defendants seem to mean that some of the fact allegations do not detail all of the specific facts underlying them; however, factual allegations do not need to provide every specific detail in order to state a claim.  *See*, *e.g., Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335, 1337 (11th Cir. 2012) (per curiam) (reversing district court's ruling that "complaint's allegations were conclusory and insufficiently factual" and taking plaintiff's allegation that defendant "knew or should have known of the gang member's shooting and funeral" as true in determining whether complaint stated negligence claim).

Derrick Stubbs, *id*. ¶ 30, 33; and failed to take reasonable alternative steps to ensure Mr. MacClain's safety short of transferring him, *id*. ¶ 59. *See* Section I(A)(2), above (describing Defendants' failures to act).

The Complaint gives sufficient notice of Ms. MacClain's claim and permits each Defendant to respond. Any defendant that "does not believe it is liable for the allegations attributed to it in the complaint" may simply "deny those allegations." *Wimbush*, 2012 WL 8719632, at *2.[8]

## III.   DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED BECAUSE IT SEEKS TO EXCLUDE RELEVANT MATERIAL.

While claiming that the Complaint is not detailed enough, Defendants also seek to strike allegations about the conditions at Hays. "Motions to strike are generally viewed with disfavor and are 'often considered time wasters.'" *TracFone Wireless, Inc. v. Zip Wireless Prod., Inc.*, 716 F. Supp. 2d 1275, 1290 (N.D. Ga. 2010) (quotation omitted). They constitute a "drastic remedy" granted "only when the pleading to be stricken has no possible relation to the controversy." *Stephens v. Trust for Pub. Land,* 479 F.Supp.2d 1341, 1346 (N.D. Ga. 2007). *See*

---

[8] Defendants also claim that Ms. MacClain's complaint is insufficient under Rule 10 because it fails to provide "allegations . . . in separately numbered paragraphs as to each defendant." Dkt. 22-1 at 7. The formulation that Defendants request is not required and would invite unnecessary duplication. *See, e.g.*, *Hernandez v. Two Brothers Farm, LLC*, 579 F. Supp. 2d 1379, 1381-82 (S.D. Fla. 2008) (rejecting defendants' claim that a "complaint should set forth a separate count for each individual [p]laintiff's . . . claims against each [d]efendant" because the complaint's "two separate counts . . . ma[de] it sufficiently clear which allegations of fact pertain to one claim and which to both").

*also Farmer*, 511 U.S. at 842 (stating that a plaintiff may demonstrate a prison official's knowledge of a substantial risk of serious harm either through direct evidence or by "'inference from circumstantial evidence'").

Defendants seek to strike mention of (i) violent incidents that took place at Hays after Mr. MacClain's death, including the stabbing death of Nathaniel Reynolds at Hays; (ii) violent incidents that took place at "facilities other than Hays;" (iii) Plaintiff's open-records lawsuit against the Georgia Department of Corrections; and (iv) Defendant Hatcher's short-lived termination from his employment for harassing Hays prisoners.  Dkt. 22-1 at 10-13.

Despite Defendants' protests, each category of information is relevant to the controversy.  First, the Complaint's references to violent incidents in the weeks following Mr. MacClain's death demonstrate that conditions at Hays exposed inmates to a substantial risk of serious harm and confirm that Mr. MacClain's death was not an anomaly, but the result of the prison's uncontrolled, violent environment.  For example, the death of Nathaniel Reynolds three weeks after Mr. MacClain's death involved the same dangerous conditions that led to Mr. MacClain's murder.  The death of Mr. Reynolds also illustrates the nature and extent of violent incidents at Hays and bears on Defendants' response or lack of response to that danger.  Accordingly, striking these allegations would be inappropriate.  *See TracFone*, 716 F. Supp. 2d at 1290  (denying motion to strike allegations and materials because they had "some possible relation to the

controversy, as they involve[d] substantially similar activity and similar parties"
(citation omitted)); *see also, Donovan v. Lynn's Food Stores, Inc.*, No. CV181-169,
1981 WL 2411, at *1 (S.D. Ga. Oct. 8, 1981) (denying motion to strike allegations
barred by statute of limitations because "it would be premature . . . to rule these
events irrelevant" to the merits and defendants "fail[ed] to show that the retention
of the impugned allegations will harm or prejudice their case").

Second, the death of Mr. Pippa Hall-Jackson, a nineteen-year-old who was
stabbed to death by a fellow Hays prisoner on February 5, 2013, shortly after both
men stepped off a transport bus from Hays, also demonstrates the prevalence of
violence at Hays.  Compl. ¶ 1 n.1.  Defendants assert that Mr. Hall-Jackson's death
is immaterial because it occurred at a prison facility other than Hays.  However,
the fact that Mr. Hall-Jackson and his assailant were both prisoners at Hays and the
attack happened immediately after they exited the transport bus from Hays make
Mr. Hall-Jackson's death relevant to the controversy here: some of the same
conditions that resulted in Mr. MacClain's death (e.g., an uncontrolled
environment and failure to monitor prisoners) likely contributed to allowing Mr.
Hall-Jackson's assailant to smuggle contraband and attack him.  Therefore, these
allegations should not be stricken from Plaintiff's Complaint.  *See TracFone,* 716
F. Supp. 2d at 1290.

Third, Defendants challenge Plaintiff's explanatory note in the Complaint
pertaining to the state court lawsuit she filed after the Department of Corrections

failed to respond to her requests for information about the death of her son and information about conditions at Hays in prison incident reports.  Compl. ¶ 29 n.7. This footnote is pertinent because it tends to explain why the Complaint does not list all of the assaults that have taken place at Hays.  Ms. MacClain diligently attempted to obtain records supporting her factual allegations prior to filing the Complaint, and, at this time, her allegations reflect the difficulty she has had in obtaining certain records.  *See* Section I(A)-(B), above (discussing the deliberate indifference standard and the evidence necessary to meet the standard).

Finally, information contained in a footnote of the Complaint about Defendant Hatcher's termination of employment from Hays in 2000 is included to shed light on how Defendant Hatcher carried out his professional responsibilities. *See* Compl. ¶ 14 n.6.  Defendants point to allegations relating to this fact as prejudicial.  However, the footnote directly relates to Defendant Hatcher's employment at the *same institution* from which he was fired for unprofessional and inappropriate behavior against prisoners and the management of the institution, which rehired and promoted him to Deputy Warden of Security, a position he held at the time of Mr. MacClain's death.

Defendants argue that striking the disputed allegations will narrow the case to "its essential components," Dkt. 22-1 at 13, when in fact these allegations are directly relevant to Ms. MacClain's Eighth Amendment claim.  Moreover, the allegations are not unfairly prejudicial—they contribute to a complete description

of the conditions that existed at Hays and the resulting injuries that occurred due to Defendants' long-term failure to address these conditions.  Further, Defendants' concerns regarding juror passions are misplaced.  If the potential impact on jurors is a concern, the appropriate time to address this concern is pre-trial through motions *in limine*.[9]  For all of these reasons, the Motion to Strike should be denied.

## CONCLUSION

Based on the foregoing, Plaintiff's Complaint is sufficient and Defendants' motions should be denied.[10]

Respectfully submitted this 16th day of December, 2013.

/s/ Melanie Velez
SARAH GERAGHTY
Georgia Bar No. 291393
MELANIE VELEZ
Georgia Bar No. 512460
SOUTHERN CENTER
FOR HUMAN RIGHTS
83 Poplar Street, N.W.
Atlanta, GA 30303
Telephone: (404) 688-1202

---

[9] *Schaaf v. SmithKline Beecham Corp.*, No. 1:04-CV-2346-GET, 2008 WL 489010, at *2 (N.D. Ga. Feb. 20, 2008) ("[T]he court finds that defendant fails to establish that the . . . decision to deny defendant's motion to strike is clearly erroneous or contrary to law at the summary judgment stage.  Furthermore, this decision does not preclude defendant from filing a motion *in limine* to exclude the evidence at trial.").

[10] If the Court determines that any aspect of Plaintiff's Complaint is insufficient, Plaintiff requests leave to file an amended complaint.

Facsimile: (404) 688-9440
*sgeraghty@schr.org*
*mvelez@schr.org*

*/s/ Andrew A. Stulce*
LAWRENCE J. BRACKEN II
Georgia Bar No. 073750
ANDREW A. STULCE
Georgia Bar No. 882889
HUNTON & WILLIAMS LLP
Bank of America Plaza, Suite 4100
600 Peachtree Street, N.E.
Atlanta, Georgia  30308-2216
Telephone:  (404) 888-4000
Facsimile:  (404) 888-4190
*lbracken@hunton.com*
*astulce@hunton.com*

*Counsel for the Plaintiff*

26

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies that this document was prepared

using one of the font and point selections approved in LR 5.1, NDGa.

This 16th day of December, 2013.

*/s/Melanie Velez*           

MELANIE VELEZ

GEORGIA BAR NO. 512460

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' PRE-ANSWER MOTION FOR MORE DEFINITE STATEMENT, TO STRIKE AND TO DISMISS IN PART** was filed electronically with the Court.  Notice of this filing will be sent to all counsel of record via the Court's CM/ECF filing system.


      This 16th day of December, 2013.


                                   */s/Melanie Velez*_____
                                   MELANIE VELEZ
                                   GEORGIA BAR NO. 512460