IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

RAHONDA MACCLAIN,
in her individual capacity and
as administrator of the Estate
of DAMION MACCLAIN, Deceased,

     Plaintiff,

v.

BRIAN OWENS, commissioner,
Georgia Department of Corrections,
et al.,

     Defendants.

CIVIL ACTION FILE
NO. 4:13-CV-00210-HLM

## ORDER

This case is before the Court on Defendants' Pre-Answer Motion for More Definite Statement, Motion to Strike, and Motion to Dismiss in Part ("Motion to Dismiss") [22].

AO 72A

# I.   Background

## A.   Plaintiff's Allegations

### 1.   The Parties

This case arises from the death of Damion MacClain ("MacClain"), who was found dead in a prison cell at Hays State Prison ("Hays") in the early morning hours of December 26, 2012. (Compl. (Docket Entry No. 1) ¶ 10.) Plaintiff was MacClain's mother, and now serves as the administrator of his estate. (Id.) Plaintiff claims that MacClain was strangled, stabbed, and sustained blunt force trauma to his head in the hours leading up to the discovery of his body. (Id.) Plaintiff brings this action in her individual

2

capacity and in her capacity as administrator of MacClain's estate. (Id.)

Defendant Brian Owens ("Defendant Owens") is and was at all relevant times the Commissioner of the Georgia Department of Corrections (the "GDC"). (Compl. ¶ 11.) Defendant Timothy Ward ("Defendant Ward") is and was at all relevant times the Assistant Commissioner of the GDC. (Id. ¶ 12.) Defendant Clay Tatum ("Defendant Tatum") was the Warden at Hays at all times relevant to this action. (Id. ¶ 13.) Defendant Shay Hatcher ("Defendant Hatcher") was a Deputy Warden of Security at Hays at all times relevant to this action, and the assistant shift supervisor on the date of MacClain's death. (Id. ¶ 14.) Defendant Betty Bailey-Dean ("Defendant Bailey-Dean") was a Deputy Warden of Care

3

and Treatment at Hays at all times relevant to this action. (Id. ¶ 15.) Defendant Timothy Clark ("Defendant Clark") was a Captain at Hays at all times relevant to this action. (Id. ¶ 16.) Defendant Joshua Johnson ("Defendant Johnson") and Defendant Linwood Burns ("Defendant Burns") were officers at Hays at all times relevant to this action and were both on duty in the A-Building of Hays on the night of MacClain's death. (Id. ¶¶ 17-18.) All Defendants are sued in their individual capacity. (Id. ¶¶ 11-18.)

## 2.   Events Giving Rise to this Lawsuit

Prior to being found dead in his cell, MacClain was an inmate at Hays. (Compl. ¶ 60.) Located in Trion, Georgia, (id. ¶ 9), Hays is one of eleven maximum security prisons in the state (id. ¶ 2). Plaintiff alleges that roughly half of Hays's

4

1,600 inmates have a security classification of "close." (Id. ¶ 2.) A classification of "close" means the prisoner is an "escape risk[]," has an "assaultive histor[y]," and/or has "detainers for other serious crimes." (Id.) Such prisoners require "constant supervision by a correctional officer." (Id.) MacClain's security level was "medium," though Plaintiff does not explain what that designation means. (Id. ¶ 60.)

Plaintiff states that sometime in late 2011 or early 2012 she began to receive calls from unknown inmates asking her for money. (Compl. ¶ 54.) Plaintiff further states that, around the time of the unknown calls, MacClain was "threatened with violence by prisoners" and "worried [that] he would not make it out of prison alive." (Id. ¶ 55.) Plaintiff claims she reported these happenings to prison authorities,

5

specifically Defendants Tatum and Bailey-Dean, and requested MacClain be moved to another prison. (Id. ¶¶ 56, 58.) Nonetheless, MacClain was not transferred and Plaintiff alleges that "no steps were taken to ensure his safety." (Id. ¶¶ 57, 59.)

MacClean died sometime during the night of December 25, 2012, or the early morning hours of December 26, 2012. (Compl. ¶¶ 69-70.) On that night, Plaintiff states that MacClain was assigned to cell number 112 of dorm A2. (Id. ¶¶ 60-61.) However, because "gang leaders" controlled housing assignments at Hays, MacClain was not in his assigned room. (Id. ¶ 61.) Plaintiff alleges that Dorms A1 and A2, which together held around 124 men, had only one dorm officer charged with their supervision. (Id. ¶ 62.)

6

AO 72A

Despite being ordered into their cells to be locked in for the night, Plaintiff contends that Hays' inmates, taking advantage of the prison's faulty locks, were roaming freely throughout dorm A2. (Compl. ¶ 64.) Plaintiff alleges specifically that Defendants Johnson and Burns were aware of this behavior, but did nothing to put a stop to it. (Id.) Sometime during the night, Plaintiff states that a group of gang affiliated prisoners assaulted MacClain in and around cell number 220. (Id. ¶¶ 65-66.) Despite his loud cries for help, no officer came to MacClain's assistance. (Id. ¶¶ 66-67.) Plaintiff claims that no officer patrolled dorm A2 during the approximately four hours leading up to this confrontation. (Id. ¶ 67, 72.) Despite MacClain's cries for help, no officers came to his aid. (Id. ¶¶ 66-67.) Finally, at

AO 72A

12:17 a.m., officers discovered MacClain unresponsive on the bottom bunk of cell 220, surrounded by four or five other prisoners. (Id. ¶ 69.) He was unresponsive and bleeding from his nose. (Id. ¶¶ 69-70.) At 1:50 a.m. on December 26, 2012, the County Coroner pronounced MacClain dead. (Id. ¶ 70.) According to the incident report, MacClain suffered "[b]ruising and swelling to left side of head [and] bleeding and wound above bridge of nose." (Id. ¶ 71.)

### 3.   The Conditions at Hays

Plaintiff paints a bleak picture of the conditions inside Hays during the years and months leading up MacClain's death. Plaintiff asserts the following general problems: (1) the facility's cell door locks were broken, allowing prisoners to freely roam in and out of their cells (Compl. ¶¶ 3, 40); (2)

8

regular fights between inmates resulted in serious injuries requiring medical attention and hospitalization (id. ¶¶ 4(a), 20(a)); (3) inmates possessed weapons such as shanks and knives (id. ¶¶ 4(b), 20(b)); (4) these weapons were not taken from inmates despite operating procedures mandating their confiscation (id. ¶¶ 4(c), 20(c)); (5) "stabbings and deaths were frequently reported" (id. ¶¶ 4(d), 20(d)); (6) understaffing caused security posts to be left unmanned (id. ¶¶ 4(e), 20(e)); (7) known violent prisoners were not monitored and supervised (id. ¶¶ 4(f), 20(f)); (8) gang leaders controlled Hays' housing and were permitted to expel unwanted inmates from their dorms (id. ¶¶ 4(h), 20(h)); (9) officers were stabbed or otherwise seriously injured on several occasions (id. ¶¶ 4(k), 20(k)); and (10)

9

AO 72A

officer's fear of the prison dorms led them to remain in control rooms (id. ¶¶ 4(l), 20(l)).

Specifically, Plaintiff lists fifteen incidents from the five months leading up to MacClain's death in which prisoners "required off-site medical care for serious injuries." (Compl. ¶ 31.) Further, Plaintiff asserts that one week before MacClain's death, on December 19, 2012, another prisoner, Derek Stubbs, was found dead in his cell. (Id. ¶ 32.) Plaintff claims that Stubbs's death was the result of an assault in another part of the prison with broken cell door locks. (Id.) Several more violent acts allegedly occurred in the weeks immediately following MacClain's death, including another murder. (Id. ¶¶ 35-39.)

AO 72A

Regarding the broken locks, Plaintiff claims that "broken and defeated cell door locks were listed as a 'Major/Critical Finding' on engineering audits at Hays in 2008, 2009, 2012, 2011, and 2012." (Compl. ¶ 41.) This meant that "Locks and Locking Control Panels" could be "easily opened." (Id. ¶ 45.) Plaintiff asserts that these broken locks played a critical role in several documented violent incidents. (Id. ¶ 47.) According to Plaintiff, a report issued three months before MacClain's death indicated that 184 of 442 cell door locks in the building could be "defeated." (Id. ¶ 49.) A purchase order for new locks was not submitted by the GDC until February 14, 2013. (Id. ¶ 52.)

11

Finally, Plaintiff emphasizes that not only were gangs allowed to control dorm assignments, but prison employees would warn inmates prior to "shakedowns" in which GDC tactical squads would search prisoners for weapons. (Compl. ¶¶ 26-28.) Plaintiff states that on at least one occasion in June 2011, Defendant Hatcher conveyed to the inmates that they would be given pizza and chicken if an upcoming "shakedown" did not reveal any weapons. (Id. ¶ 28.) Plaintiff asserts that these artificially deflated contraband numbers contributed to Hays receiving a "facility of the year" award from the GDC. (Id. ¶ 30.)

## B.  Procedural Background

On September 4, 2013, Plaintiff filed the Instant Lawsuit against Defendants in their individual capacities.

12

(Docket Entry No. 1.) Plaintiff asserted only one count: "Violation of Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983." (Compl. § VII.)

Defendants filed their Motion to Dismiss on November 15, 2013. (Docket Entry No. 22.) The briefing process for that Motion is now complete, and the Court finds that the Motion is ripe for resolution.

## II.   Discussion

### A.   Motion for More Definite Statement

#### 1.   Standard for Granting a Motion for More Definite Statement

"The Federal Rules of Civil Procedure embrace a theory of notice pleading." Litman v. Mabus, No. 1:13-cv-

43(WLS), 2013 WL 5781666, at *1 (M.D. Ga. Oct. 25, 2013)

(citing <u>United States v. Baxter Int'l, Inc.</u>, 345 F.3d 866, 881

(11th Cir. 2003). "The basic idea of notice pleading is to

give 'the defendant fair notice of what the . . . claim is and

the ground upon which it rests.'" <u>Id.</u> (alteration in original)

(quoting <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007)). This

standard is embodied in Federal Rule of Civil Procedure

8(a)(2), which states: "A pleading that states a claim for

relief must contain . . . a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2). This notice must be laid out "in numbered

paragraphs, each limited as far as practicable to a single set

of circumstances." Fed. R. Civ. P. 10(b).

14

A complaint that is not in conformance with these standards is subject to being ordered re-pled under Federal Rule of Civil Procedure 12(e).[1] Fed. R. Civ. P. 12(e). <u>See Clark v. Governor's Office of Children and Families Office of Planning and Budget</u>, Civil Action File No. 1:13-CV-1233-TWT, 2013 WL 4718371, at *3 (N.D. Ga. Sept. 3, 2013) ("If a defendant needs more information to answer a complaint,

---

[1]Federal Rule of Civil Procedure 12(e) provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.  If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e).

15

the proper response is for that defendant to move for a more definite statement under rule 12(e) of the Federal Rules of Civil Procedure." (internal quotation marks and citation omitted)). In short, because "[c]omplaints that do not comply with [Federal Rules of Civil Procedure 8 and 10] present an unfair burden on a defendant," they may "require a more definite statement of the complaint." Id. (internal quotation marks and citation omitted).

## 2.   Application

Here, the Court finds that Plaintiff's Complaint is not so vague as to require re-pleading pursuant to Federal Rule of Civil Procedure 12(e). Defendants' primary issue with the Complaint is that it "makes general and conclusory statements to all 'Defendants.'" (Mot. Dismiss (Docket Entry

16

No. 22-1) at 8.) Consequently, Defendants argue, because Defendants are "not similarly situated" it is difficult for each defendant to know what accusations apply to her specifically. (Id. at 9.) Defendants contend that, "[a]t the very least, defendants are entitled to know (1) the manner in which each defendant is alleged to have violated MacClain's constitutional rights and (2) specific facts as to the actions that each Defendant allegedly took or failed to take which violated those rights." (Id. at 10.)

The Court disagrees. The Complaint puts Defendants on sufficient notice of the manner in which Plaintiff alleges MacClain's constitutional rights were violated. Though, as Defendants point out, the Complaint regularly refers to "Defendants" as a whole (see Mot. Dismiss at 2 n.1),

17

AO 72A

ordering Plaintiff to remove the word "Defendants" and instead individually list each Defendant would do little to advance the resolution of this case. Indeed, "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997). Additionally, the Complaint attributes allegations to specific Defendants regularly enough to put each Defendant on notice of the actions they took that led to there inclusion therein. (See Compl. ¶¶ 22 (listing the specific means by which Defendants Tatum, Bailey-Dean, Owens, Ward, and Hatcher became aware of the risk of harm to MacClain), 26-28 (listing specific actions of

18

Defendants Tatum, Hatcher, and Clark), 55-59 (describing how Defendants Tatum and Bailey-Dean acquired specific knowledge of threats to MacClain), 64 (describing inaction by Defendants Johnson and Burns on the night of MacClain's death).)

The Court is mindful that, without proper pleading, "the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Anderson v. Dist. Bd. Of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366-67 (11th Cir. 1996) (describing the perils of moving forward with "shotgun pleadings" asserting "multiple claims for relief"). However, the Court finds that such problems are unlikely to appear in this case. Plaintiff's Complaint asserts only one count:

"Violation of Eighth and Fourteenth Amendments to the United States constitution and 42 U.S.C. § 1983." (Compl. ¶¶ 74-78.) Each Defendant is free to admit or deny the allegations contained therein as they see fit. Though it is likely  true that each Defendant is "not similarly situated" (Mot. Dismiss at 9), such differences go to how each Defendant will defend himself or herself against the allegations going forward, not the sufficiency of Plaintiff's allegations from the outset of the case. Consequently, Defendants' Motion for More Definite Statement is denied.[2]

---

[2]Further, as discussed infra Part II.C.2., the Court grants Defendants' Motion to Dismiss Defendants Johsnon and Burns, and all remaining Defendants have at least some supervisory authority at Hays.

20

## B.   Motion to Strike

### 1.   Standard for Granting a Motion to Strike

Federal Rule of Civil Procedure 12(f) governs motions

to strike, and provides:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act:
>
> (1)  on its own; or
> (2)  on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).  A motion to strike is a drastic remedy,

and is "'disfavored by the courts.'" <u>Otero v. Vito</u>, No.

5:04CV211DF, 2005 WL 1429755, at *1 (M.D. Ga. June 15,

2005) (quoting <u>Agan v. Katzman & Korr, P.A.</u>, 328 F. Supp.

2d 1363, 1367 (S.D. Fla. 2004)).  In general, courts will

O 72A

deny motions to strike "'unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" <u>Allen v. Life Ins. Co. of N. Am.</u>, 267 F.R.D. 407, 410 (N.D. Ga. 2009) (quoting <u>Italiano v. Jones Chems., Inc.</u>, 908 F. Supp. 904, 907 (M.D. Fla. 1995)).

Additionally, "the Supreme Court established long ago that federal courts have the duty to keep their records clean and free from scandal." <u>United States v. Spellissy</u>, 374 F. App'x 898, 900 (11th Cir. 2010) (per curiam) (citing <u>Green v. Elbert</u>, 137 U.S. 615, 624 (1890)). "Courts have inherent powers derived from common law that assist in exercising their enumerated judicial powers, such as managing their cases and courtrooms." <u>Id.</u> Those inherent powers include

22

AO 72A

AO 72A

the ability to strike immaterial and scandalous filings.
See id. (concluding that district court did not abuse its
discretion in striking affidavit and brief as immaterial and
scandalous); see also Stephens v. Georgia Dept. of
Transp., 134 F. App'x 320, 322-23 (11th Cir. 2005) (per
curiam) (finding district court did not abuse its discretion in
striking as immaterial and scandalous portions of plaintiff's
summary judgment motion that referred to bankruptcy filing
of another employee who was witness).   "[A] [m]atter is
characterized as scandalous when it casts someone in a
derogatory light." Otero, 2005 WL 1429755, at *2.

### 2.   Application

Here, Defendant requests the Court strike from the
Complaint all or portions of paragraphs one, thirty-five

23

AO 72A

through thirty-nine, and footnotes one and five through

seven. (Mot. Dismiss at 11-12.)[3] The Court agrees that

allegations of inmate violence occurring after MacClain's

death has no possible relationship to the controversy.

Plaintiff's burden is to demonstrate that Defendants

"harbored a subjective awareness that [MacClain] was in

serious danger while in his cell on the night of [December

25-26, 2012]." Goodman v. Kimbrough, 718 F.3d 1325,

1332 (11th Cir. 2013). However, any incidents occurring

after December 26, 2012, could not possibly affect the

---

[3]Defendant more generally requests that the Court strike "allegations involving incidents occurring after December 26, 2012, or occurring at prisons other than Hays," along with allegations concerning "prior bad conduct by Defendants that are unrelated to broken locks or conditions at Hays." (Mot. Dismiss at 11-12.) However, the listed sections of the Complaint are the only ones specifically challenged by Defendants, and consequently the only portions of the Complaint the Court will address.

24

subjective knowledge of Defendants. Consequently, the Court strikes the references to the January 18, 2013, murder of Nathaniel Reynolds, and the February 5, 2013, murder of Pippa Hall-Jackson in paragraph one and note one of the Complaint. (Compl. ¶ 1 & n.1.) Likewise, the Court strikes paragraphs thirty-five to thirty-nine of the Complaint, as they describe violent incidents occurring at Hays after December 26, 2012. (See id. ¶¶ 35-39 (describing incidents occurring between January 12, 2013 and January 25, 2013).)

However, having reviewed the remaining challenged portions of the Complaint, which concern prior bad acts by Defendants, the Court cannot say at this time that they are so unrelated, confusing, or prejudicial as to warrant the

25

.O 72A

drastic remedy provided by a Motion to Strike. Defendants opine that they "cannot rely upon the hope of a favorable ruling on an <u>in limine</u> motion to exclude irrelevant, prejudicial allegations." (Def.'s Reply (Docket Entry No. 35) at 15.) The Court disagrees. An <u>in limine</u> motion is the appropriate means to address the admissibility of these remaining allegations, as by that time the Court will have the benefit of a developed factual record on which to base its decision.

## C.   Motion to Dismiss

Defendant moves to the Court to dismiss Defendants Bailey-Dean, Burns, and Johnson based on either the failure of Plaintiff to state a cognizable claim for relief

26

against those Defendants, or their entitlement to qualified immunity. (Mot. Dismiss at 17-24.)

### 1.   Applicable Law

#### a.   Standard for Granting a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions of a complaint, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true and must construe those allegations in the light most favorable to the plaintiff.  <u>Rivell v. Private Health Care Sys., Inc.</u>, 520 F.3d 1308, 1309 (11th Cir. 2008).

27

Although a court is required to accept well-pleaded facts as true when evaluating a motion to dismiss, it is not required to accept the plaintiff's legal conclusions. <u>Chandler v. Sec'y of Fla. Dep't of Transp.</u>, 695 F.3d 1194, 1199 (11th Cir. 2012) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).   When evaluating the sufficiency of a plaintiff's complaint, the court makes reasonable inferences in favor of the plaintiff, but is not required to draw the plaintiff's inference. <u>Aldana v. Del Monte Fresh Produce, N.A., Inc.</u>, 416 F.3d 1242, 1248 (11th Cir. 2005).   Similarly, the Court does not accept as true "unwarranted deductions of fact or conclusions masquerading as facts." <u>Snow v. DirecTV, Inc.</u>, 450 F.3d 1314, 1321 (11th Cir. 2006) (internal quotation marks and citation omitted).

28

Finally, the Court may dismiss a complaint if it does not plead "enough facts to state a claim to relief that is plausible on its face." Chandler, 695 F.3d at 1199 (internal quotation marks and citation omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court observed that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  500 U.S. at 555.  Although factual allegations in a complaint need not be detailed, those allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id.  Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to

29

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  The mere possibility that the defendant might have acted unlawfully is not sufficient to allow a claim to survive a motion to dismiss. Id. Instead, the well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

### b.  Requirements for a Claim of Deliberate Indifference

The Eleventh Amendment bars suits by private citizens against states unless they consent to be sued. Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989).  Persons who act under color of state law, however—including employees of state governments—are subject to suit under § 1983.  See Hafer v. Melo, 502 U.S. 21, 31 (1991) ("We hold that state

30

AO 72A

officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts.").  A state official will be liable under § 1983 only if the plaintiff can demonstrate that the official violated his federal constitutional or statutory rights. <u>See</u> <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S. 600, 617 (1979) ("§ 1983 by itself does not protect anyone against anything . . . .").

In the case of prison officials, "[t]he Eighth Amendment imposes a duty . . . 'to protect prisoners from violence at the hands of other prisoners.'" <u>Rodriguez v. Sec'y for Dep't of Corr.</u>, 508 F.3d 611, 616-17 (11th Cir. 2007) (quoting

31

Farmer v. Brennan, 511 U.S. 825, 833 (1994)). "It is not,
however, every injury suffered by one inmate at the hands
of another that translates into a constitutional liability for
prison officials responsible for the victim's safety." Carter v.
Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (quoting
Farmer, 511 U.S. at 834). Instead, "[a] prison official's
deliberate indifference to a known, substantial risk of
serious harm to an inmate violates the Eighth Amendment."
Marsh v. Butler Cty., Ala., 268 F.3d 1014, 1028 (11th Cir.
2001).

In order to prevail on such a claim, the plaintiff must
demonstrate three elements. First, the official must have
"actually (subjectively) [known] that an inmate [was] facing
a substantial risk of serious harm." Rodriguez, 508 F.3d at

617.[4] This requires more than demonstrating that a reasonable person would have known of the substantial risk, or that the official in question should have known of the risk. <u>Farmer</u>, 511 U.S. at 838. Rather, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837.

Second, the official must have "disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." <u>Rodriguez</u>, 508 F.3d at 617; <u>See also</u>

---

[4]Some courts break this element into two separate elements (existence of danger and knowledge of danger), but there is no difference in application. <u>See</u> <u>Marsh</u>, 268 F.3d at 1030 ("We conclude that Plaintiffs adequately allege 1) an objective, substantial risk of serious harm to inmates existed, 2) the [prison official] was subjectively aware of this risk, 3) the [prison official] responded in an objectively unreasonable way to this known risk, and 4) the constitutional violation caused [p]laintiff's injuries.").

Franklin v. Curry, - - F.3d - -, 2013 WL 6728101, at *3 (11th Cir. 2013) ("Deliberate indifference requires the following: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence" (internal quotation marks and citation omitted)). "[U]nder this standard, a jury could reasonably finds that [an official] 'fail[ed] to take reasonable measures to abate' a known risk of harm if the evidence showed that he knew of ways to reduce the harm but knowingly declined to act, or that he knew of ways to reduce the harm but recklessly declined to act." Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1583 (11th Cir. 1995) (second alteration in original) (quoting Farmer, 511 U.S. at 847).

34

Lastly, a plaintiff must show that there was a "causal connection between the prison official's conduct and the Eighth Amendment violation." <u>Rodriguez</u>, 508 F.3d at 617. This means Plaintiff must demonstrate two links: (1) "a link between [the prison official's] allegedly deliberately indifferent acts and omissions and the excessive risk of violence;" and (2) "a link between the excessive risk of violence and [the plaintiff's] injury." <u>Hale</u>, 50 F.3d at 1584.

Finally, if the Court determines that the Complaint adequately states a claim for deliberate indifference, the Court must address the issue of qualified immunity. "Qualified immunity shields government officials acting within their discretionary authority from liability unless the officials 'violate clearly established statutory or constitutional

35

rights of which a reasonable person would have known.'"

Franklin, 2013 WL 6728101, at *2 (quoting Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982)). This is a two step

inquiry, requiring the Court to first consider whether the

defendant official "was acting within the scope of his

discretionary authority," and if so, whether the official's

actions "violated clearly established law." Maggio v. Sipple,

211 F.3d 1346, 1350 (11th Cir. 2000) (internal quotations &

citation omitted). "For a constitutional right to be clearly

established, the contours of that right 'must be sufficiently

clear that a reasonable official would understand that what

he is doing violates that right. This is not to say that an

official action is protected by qualified immunity unless the

very action in question has been previously held unlawful .

36

AO 72A

. . but it is to say that in the light of pre-exisiting law the unlawfulness must be apparent." <u>Holmes v. Kucynda</u>, 321 F.3d 1069, 1077-78 (11th Cir. 2003) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).

### 2.   Application

Because of the differences in the allegations against Defendant Bailey-Dean, who is alleged to have spoken directly with Plaintiff about the danger facing MacClain, and Defendants Burns and Johnson, whose inclusion in the lawsuit stems from their actions on the night of MacClain's death, the Court first addresses Defendant Bailey-Dean, and then addresses Defendants Burns and Johnson together.

AO 72A

### a.   Defendant Bailey-Dean

### i.   Sufficiency   of   Plaintiff's Allegations

Plaintiff makes the following allegations against Defendant Bailey-Dean:[56] (1) she had been warned by Plaintiff that MacClain was in danger and sought a transfer to another prison (Compl. ¶ 22(a)); (2) she reviewed incident reports in which a high rate of deaths, stabbings, and assaults were documented (id. ¶ 22(b)); (3) she knew that Georgia Department of Corrections ("GDC") internal

---

[5]As discussed supra Part II.A.2., the Court takes allegations against "Defendants" to mean that allegation applies to each individual Defendant, including Defendant Bailey-Dean.

[6]The Court disregards portions of the Complaint containing conclusory allegations. (See, e.g., Compl. ¶¶ 5 ("The Defendants were deliberately indifferent in responding to the known security hazards at Hays."), 7 ("Defendants' actions and inactions proximately caused [MacClain's] death.").)

38

audits found a pervasive problem of broken locks on cell doors from approximately 2008 until 2012 (id. ¶¶ 22(c), 40); (4) she knew that Hays officers had been critically injured by prisoners wielding weapons (id. ¶ 22(d)); (5) she knew that the broken locks at Hays had contributed to another inmate's death on December 19, 2012 (id. ¶ 22(e)); (6) she knew that many prisoners and prisoners' family members complained about the unusually high level of violence at Hays (id. 22(f)); (7) she failed to take reasonable steps to fix broken locks at Hays (id. ¶¶ 24, 30, 33, 51); (8) she knew that Hays was understaffed and failed to take reasonable steps to ensure adequate staffing (id. ¶ 25); (9) in response to calls from Plaintiff describing threats to MacClain, she responded that the matter had been referred to MacClain's

AO 72A

prison counselor (id. ¶ 58); (10) she did not take alternative steps to ensure MacClain's safety (id. ¶ 59); and (11) she permitted gang leaders to control housing assignments at Hays (id. ¶ 61).

Turning to the elements of a deliberate indifference claim, Plaintiff adequately alleges that Defendant Bailey-Dean knew MacClain was "facing a substantial risk of serious harm" in two ways. Rodriguez, 508 F.3d at 617. First, the conditions inside the prison described by Plaintiff and attributed to Defendant Bailey-Dean, if accompanied by proof of the remaining elements, are adequate to sustain a claim of deliberate indifference. See Marsh, 268 F.3d at 1028 ("We accept that conditions in a jail facility that allow prisoners ready access to weapons, fail to provide an ability

40

to lock down inmates, and fail to allow for surveillance of inmates pose a substantial risk of serious harm to inmates."). Second, regardless of the dangerous conditions issue, Plaintiff's allegations that Defendant Bailey-Dean had subjective knowledge of threats on MacClain's life through conversations with Plaintiff and MaClain are sufficient to satisfy the knowledge of a substantial risk of serious harm requirement. See Rodriguez, 508 F.3d at 614 & 620 n.12 (holding that the subjective knowledge requirement of a deliberate indifference claim was met when prisoner reported to prison officer that he had received death threats from other inmates); see also Hale, 50 F.3d at 1583 ("[Plaintiff] was not required to show that [the prison official] knew precisely who would attack whom, but only that [the

41

official] had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence." (internal quotation marks and citation omitted)).

Further, the Complaint adequately states that Defendant Bailey-Dean disregarded the presented substantial risk of serious harm. For the purposes of the Instant Motion, the Court accepts Plaintiff's argument that "the Complaint does not allege that [Defendant] Bailey-Dean actually referred the matter to a counselor – it alleges that [Defendant] Bailey-Dean informed [Plaintiff] that the 'matter had been referred to [MacClain's] prison counselor.'"[7] (Pl.'s Resp. Mot. Dismiss (Docket Entry No.

---

[7]The Court, however, is not convinced that if Defendant Bailey-Dean did indeed refer MacClain's issues to an appropriate prison official that such an action could be shown to be "more than gross negligence." Franklin, 2013 WL 6728101, at *3.

30) at 10 & n.4 (also stating that "[d]iscovery is necessary to determine whether this was in fact true").) Consequently, the Complaint sufficiently alleges that Defendant Bailey-Dean did "not take reasonable measures to alleviate" the risk of harm to MacClain. Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1235 (11th Cir. 2010) (quoting Marsh, 268 F.3d at 1027).

Finally, given that Plaintiff adequately alleged that Defendant Bailey-Dean knew of a serious risk to MacClain and disregarded it, the Court also finds that the Complaint adequately demonstrates that her inaction satisfies the element of causation. It is sufficiently plausible that Defendant Bailey-Dean, as a deputy warden armed with the knowledge of unsatisfactory conditions at Hays and threats

43

on MacClain's life, could have taken some action to avert his eventual death. See Rodriguez, 508 F.3d at 622 ("For purposes of determining whether [the prison official] caused the Eighth Amendment violation and [the plaintiff's] subsequent injury, the 'critical' question is whether [the prison official] was 'in a position to take steps that could have averted the stabbing incident ... but, through [deliberate] indifference, failed to do so.'" (fourth alteration in original) (quoting Williams v. Bennet, 689 F.2d 1370, 1384 (11th Cir. 1982)).

Consequently, the Court finds that the Complaint adequately alleges a claim of deliberate indifference against Defendant Bailey-Dean, and moves on to consider whether she is protected by qualified immunity.

44

## ii.   Qualified Immunity

Plaintiff does not dispute that Defendant Bailey-Dean was acting within her discretionary authority.(See Pl.'s Resp. Mot. Dismiss at 12-17.) Consequently, the only issue the Court must consider is whether the Complaint adequately alleges that Defendant Bailey-Dean violated MacClain's clearly established statutory or constitutional rights. The Court finds that it does.

In Marsh, two plaintiffs alleged that the jail in which they were housed was understaffed, had broken cell door locks that prevented guards from locking down prisoners, and that the jailers working there were afraid to conduct visual inspections because of the freedom with which prisoners roamed certain parts of the jail. Marsh, 268 F.3d at 1024.

45

The jail also received many complaints and requests for assistance from prisoners, and a prisoner's rights group wrote to the jail warning them of the threat to the safety of inmates. Id. at 1025. Under these conditions, the two plaintiffs were violently beaten in their cells on consecutive days. Id. They sued Butler County, the Butler County Commission, and the sheriff responsible for operation of the prison. Id. at 1023-24. In response to the sheriff's assertion of qualified immunity, the Eleventh Circuit wrote that, "[w]e accept that at least three of our decisions did clearly establish, at the [time of the attacks on the plaintiffs] that the conditions of confinement [p]laintiffs allege did pose a substantial risk of serious harm to inmates." Marsh, 268 F.3d at 1033 (citing Hale, 50 F.3d 1579; Williams v.

Edwards, 547 F.3d 1206 (5th Cir. 1977); Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974)[8]).

While it is true that in Marsh, "[t]he [s]heriff [had] acted as the final policymaker of [the county] for those aspects of jail operation under her control," the Court does not find this detrimental to Plaintiff's claim. Marsh, 268 F.3d at 1023-24. Plaintiff describes Defendant Bailey-Dean as a "Deputy Warden" with "shared responsibility for day-to-day operations at Hays." (Compl. ¶ 15.) Perhaps the record eventually will show that this is an overstatement of Defendant Bailey-Dean's role at Hays, but based on the

_____

[8]Opinions of the United States Court of Appeals for the Fifth Circuit issued prior to October 1, 1981, the date marking the creation of the United States Court of Appeals for the Eleventh Circuit, are binding precedent on this Court. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc).

47

AO 72A

facts alleged and the presumptions which the Court must give them, the Court finds that a "reasonable official" in her position "would understand that" allowing the present conditions at Hays to persist violated MacClain's clearly established rights. <u>Bashir v. Rockdale Cnty.</u>, 445 F.3d 1323, 1327 (11th Cir. 2006) (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)).

Further, in <u>Rodriguez</u>, the plaintiff, an inmate at the Everglades Correctional Institution in Miami, Florida, told an "Assistant Warden for Operations" about the threat made against his life by gang members in the prison, and requested that he be placed in protective custody. <u>Rodriguez</u>, 508 F.3d at 613-14. The assistant "took no action with respect to [the plaintiff's] allegations or his

48

requests for protection." Id. at 614. Instead, the plaintiff was released into the general prison population and promptly stabbed in the back with a shank. Id. at 616. In overturning a grant of summary judgment to the assistant warden, the Eleventh Circuit wrote, "[i]n the context of this case, we conclude that the gang-related threats made on [plaintiff's] life, which were explicitly reported to prison officials, present a substantial enough risk of harm to trigger a prison official's Eighth Amendment duty to act; that is, to take some steps to investigate the likelihood that the reported threat will materialize and to take some steps aimed at reducing the likelihood of the risk." Id. at 617 n.12.

Here, Plaintiff alleges that Defendant Bailey-Dean was explicitly told of threats to the life of MacClain. (Compl. ¶

49

22(a).) Further, Plaintiff alleged that, in the face of that knowledge, Defendant Bailey-Dean took no action to protect MacClain from that threat. (Id. ¶ 59.) Under these circumstances, the Court finds that Defendant Bailey-Dean had fair warning that, given knowledge of a threat to MacClain's life, she was under a duty to act. Consequently because of her alleged failure to act both in the face of the deplorable conditions described in the Complaint and her alleged specific knowledge of threats on MacClain's life, the Court finds that Defendant Bailey-Dean is not entitled to qualified immunity.

50

### a.   Defendants Burns and Johnson

### i.   Sufficiency of Plaintiff's Allegations

Plaintiff makes the following allegations against Defendants Burns and Johnson:[9][10] (1) they knew that Hays officers had been critically injured by prisoners wielding weapons (id. ¶ 22(d)); (2) they knew that the broken locks at Hays had contributed to another inmate's death on December 19, 2012 (id. ¶ 22(e)); (3) they knew that many prisoners and prisoners' family members complained about

---

[9]As discussed supra Part II.A.2., the Court takes allegations against "Defendants" to mean the claim applies to each individual Defendant, including Defendants Burns and Johnson.

[10]The Court disregards portions of the Complaint containing conclusory allegations. (See, e.g., Compl. ¶¶ 5 ("The Defendants were deliberately indifferent in responding to the known security hazards at Hays."), 7 ("Defendants' actions and inactions proximately caused [MacClain's] death.").)

51

the unusually high level of violence at Hays (id. 22(f)); (4) they failed to take reasonable steps to fix broken locks or otherwise correct the dangerous conditions at Hays (id. ¶¶ 24, 30, 33, 51); (5) they permitted gang leaders to control housing assignments at Hays (id. ¶ 61); (6) on the night of Hays' death, they knew that prisoners had ignored the lockdown order in dorm A2, but did nothing to ensure that prisoners remained in cells (id. ¶ 64); (7) they did not make a security round for approximately four hours before MacClain's body was found (id. ¶ 72); and (8) at some point on the night of MacClain's death, Defendant Burns summoned other correctional personnel to report a fight, which led to the discovery of MacClain's body (id. ¶ 69). The theory of liability that Plaintiff attempts to draw from these

52

allegations is that: (1) Defendants Burns and Johnson knew that the violent conditions in Hays on December 25, 2012, created a substantial risk of serious harm to MacClain (Compl. ¶¶ 22(d-f), 64); (2) armed with this knowledge, they deliberately or recklessly failed to act to prevent harm to MacClain on the night of his death (id. ¶¶ 64, 72); and (3) appropriate action on their part could have avoided MacClain's death.[11] The Court finds that this theory of

_____

[11]To the extent Plaintiff claims that Defendants Burns and Johnson are liable based on their refusal to fix the broken locks and tackle the general dangerous conditions that existed in the prison in the months leading up to MacClain's death, the Court finds that Plaintiff's allegations fail to move that claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Defendants Burns and Johnson were line correctional officers (Compl. ¶¶ 17-18), and there is no indication in the Complaint that either one had the authority or ability to address any systematic and/or structural problems with Hays.

AO 72A

liability does not amount to a legally cognizable claim against Defendants Burns and Johnson.

The cracks Plaintiff's story lie primarily with the third element of a deliberate indifference claim: causation.[12] At various points in the Complaint, Plaintiff alleges that Hays houses prisoners with assaultive histories who are deemed dangerous (Compl.¶ 2), the prison was understaffed to the point that, on the night of MacClain's death, there was one supervisory officer per one hundred twenty-four inmates in MacClain's dorm (id. ¶¶ 4(e), 20(e), 25), prisoners possessed weapons such as shanks and knives (id. ¶

---

[12]The problems with Plaintiff's allegations could also be described as a lack of unreasonableness by Defendants Burns and Johnson, as it is not unreasonable for them to have done nothing when any actions they could have taken would have been dangerous and highly unlikely to assist MacClain.

54

20(b)), officers were often stabbed or injured (id. ¶ 4(k)), and locks on cell doors did not work, preventing officers from effectively locking down inmates (id. ¶¶ 40-51). Nonetheless, Plaintiff claims that Defendants Johnson and Burns should have done something to remedy these conditions on the night of MacClain's death. (See Pl.'s Resp. Mot. Dismiss at 9-12). The Court, however, fails to see how Defendants Burns and Johnson could have improved the situation.

Plaintiff suggests several preventative actions Defendants Burns and Johnson could have taken. First, that they could have attempted to "secure prisoners in their cells." (Pl.'s Resp. Mot. Dismiss at 9.) However, Plaintiff's allegation that none of the locks in the dorm worked and

that officers were unable to lock down prisoners make this suggested action futile. (*See* Compl. ¶ 47 ("[O]n May 31, 2011, Officer D. Cadle wrote in a Use of Force Supplemental Report that a prisoner who refused to remain in his cell attacked him: 'Inmates were on lock down[.] Inmates came out of cell [and] refused to return to cell after a direct order." (second and third alterations in original))). Second, Plaintiff suggests that Defendant Johnson could have taken his "required rounds of the dorm." (Pl.'s Resp. Mot. Dismiss at 9.) But again, based on the totality of the Complaint, an officer would be risking his life to set foot in the dorm area, and there would be little he could do to keep prisoners in their cells. (*See* Compl. ¶¶ 4(b), 64 (stating that prisoners were "heavily armed with shanks, knives, and

56

other weapons," and that "[b]ecause cell door locks did not work" inmates were roaming the dorms and "drinking prisoner-made alcohol" on the night of MacClain's death).) Finally, Plaintiff suggests that Defendants Johnson and Burns could have "alerted correctional staff about the problem" or taken "other steps to reduce the risk of harm." (Id.) This suggestion ignores the portions of the Complaint in which Plaintiff explains in great detail how the prison staff was already aware of these problems. (See, e.g., Compl. ¶ 22 (describing prison officials extensive knowledge of the security problems inside Hays).) Defendants Burns and Johnson telling their superiors that the prisoners were not locking down as directed would have only been repeating

57

information that the superiors were allegedly already aware of.

In sum, Plaintiff is overlooking the central story in her Complaint in alleging that Defendants Burns and Johnson are liable for the death of MacClain. If the conditions in the prison truly were as deplorable as Plaintiff describes, which the Court must assume they were, then the Court fails to see what Defendant Burns and Johnson could have done to avert harm to MacClain on the night of his death, much less how they were "more than grossly negligent" by deciding to stay out of the dorm area on the night of his death. Indeed, the conditions described in the Complaint were as much a threat to the safety of Defendants Burns and Johnson as

58

they were to MacClain. Consequently, Defendants Burns and Johnson are dismissed from the Instant Action.

### ii. Qualified Immunity

Because a finding of a legally cognizable claim against a defendant is a prerequisite to granting qualified immunity, and the Court finds that Plaintiff failed to allege such a claim against Defendants Burns and Johnson, the Court does not address whether they are entitled to qualified immunity.

### D. Summary

Because the Court finds that the Complaint puts Defendants on sufficient notice of the wrongs they are alleged to have committed against MacClain, the Court denies Defendants' Motion for a More Definite Statement.

AO 72A

Defendant's Motion to Strike, on the other hand, is granted in part and denied in part. The Court agrees that violent incidents occurring after MacClain's death could not possibly be relevant to what Defendants knew before the night he died, and consequently strikes paragraphs thirty-five to thirty-nine of the Complaint, and the portions of paragraph one and footnote one describing deaths that occurred subsequent to December 26, 2012. However, because the Court does not find that Defendants' prior bad acts are so clearly unrelated to the Instant Action to warrant removal from the Complaint at this time, the Court denies Defendants' request that their mention be stricken.

With regards to Defendant Bailey-Dean, the Court finds that Plaintiff has adequately pled a claim of deliberate

60

indifference against her. The Complaint sufficiently alleges that she knew of a substantial risk of serious harm to MacClain, she did not act on that knowledge, and that action on her part could have prevented the harm that did occur to MacClain. Further, because the state of the law at the time of the incidents alleged in the Complaint gave Defendant Bailey-Dean fair warning that her alleged decision not to act was in violation of MacClain's constitutional rights, Defendant Bailey-Dean's request for qualified immunity is denied.

Finally, the Court finds that the Complaint fails to state a viable claim for relief against Defendants Burns and Johnson. Based on the conditions Plaintiff alleges were prevalent at Hays during the end of MacClain's stay there,

AO 72A

the Court finds that Defendant Burns and Johnson could have done little to help MacClain on the night of his death. Moreover, any action they could have attempted would have involved serious risk to their own lives. Consequently, their alleged inaction does not meet the "more than grossly negligent" standard, cannot be said to have caused MacClain's injury, and does not amount to deliberate indifference.

## III. Conclusion

ACCORDINGLY, Defendants' Motion for a More Definite Statement [22] is **DENIED**. Defendants' Motion to Strike [22] is **GRANTED IN PART AND DENIED IN PART**. The Court **GRANTS** the portion of the Motion to Strike as it relates to paragraphs thirty-five (35) to thirty-nine (39) of the

62

AO 72A

Complaint and the references to the deaths of Nathaniel Reynolds and Pippa Hall-Jackson in paragraph one (1) and note one (1) of the Complaint. The Court **DENIES** the Motion to Strike in all other respects. Finally, Defendant's Motion to Dismiss [22] is **GRANTED IN PART AND DENIED IN PART**. The Court **GRANTS** the Motion to Dismiss with regards to Defendants Burns and Johnson, and consequently **DISMISSES** Defendants Burns and Johnson from this action. The Court **DENIES** the Motion to Dismiss with regards to Defendant Bailey-Dean.

IT IS SO ORDERED, this the 27 day of January, 2014.

UNITED STATES DISTRICT JUDGE

63